Order Form (01/2005)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 CV 7174 | **DATE** | February 28, 2012 |
| **CASE TITLE** | PUGH v. ILLINOIS STATE BOARD OF EDUC., et al. | | |

**DOCKET ENTRY TEXT:**

The Court GRANTS Defendants Christopher A. Koch and the Illinois State Board of Education's Motion to Dismiss [32], as well as Defendant Deloris Cunigan's Motion to Dismiss [31]. The Plaintiff's Complaint is dismissed with prejudice. Plaintiff's motion entitled "Response and Motion for Default Judgment for Failure to Comply with Supreme Court Rule 216" is DENIED because it is, in substance, just a response to the motions to dismiss [37].

■[For further detail see below.]

Docketing to mail notice,

and AO-450.

## STATEMENT

   Plaintiff Mary Pugh worked for twelve years as a special education teacher's aid for the Chicago Public Schools. She now brings this action *pro se* against the Illinois State Board of Education (ISBE), one of its employees Christopher Koch, and her former special education coordinator Deloris Cunigan, alleging that the Chicago Public Schools misappropriated funds that were intended for her salary and that Defendants retaliated against her for making complaints about those misappropriations.

   Now before the Court are Defendants Christopher A. Koch and the Illinois State Board of Education's Motion to Dismiss, as well as Defendant Deloris Cunigan's Motion to Dismiss. This Order also disposes of docket entry number 37, which Plaintiff styled as a "Response and Motion for Default Judgment for Failure to Comply with Supreme Court Rule 216," because it is, in substance, just a response to the motions to dismiss.

### I. Factual Background

   The following facts are pulled from Plaintiff's Amended Complaint and are assumed to be true for purposes of this Motion.[1] (Doc. 30.)

   Mary Pugh worked as a teacher's aid for Tilden Career Community Academy, a Chicago Public Schools (CPS) high school. She worked in special education programs. Her annual compensation was approximately $24,721. At some point, Pugh was contacted by the IRS and learned of a discrepancy between the income she reported on her annual tax forms and some type of reporting that the Chicago Board of Education did. This led her to believe that the Chicago Public Schools had deliberately misclassified her position so that they could pay her less than the amount allotted for it, and pocket the difference. The Chicago

---

[1] The Court will not include citations to the complaint because the relevant allegations are presented in a repetitive and circular fashion.

Page 1 of 3

Board of Education was able to get away with the scheme because there was no oversight for the funds they received. Specifically, the Illinois State Board of Education (ISBE) allocated funds to CPS as part of the Funding for Initiatives for Children and Risk (ICARE) Program. Those funds were supposed to allow CPS to create designated special education positions in its schools. Although Pugh's job should have been classified as one of those ICARE-funded positions, it was classified as something else.

Pugh sought to correct this error by reporting the misclassification to several individuals and entities, including the Chicago Teachers Union and the ISBE. One of the individuals she complained to at the ISBE was Christopher Koch. Koch failed to respond to Pugh's complaint.

Pugh also reported her findings to a number of individuals at her school, including Principal Phyllis Hammond (who is not a named defendant in this action) and special education coordinator, Deloris Cunigan (who is a named defendant). Those individuals, and others at Tilden High School, then retaliated against Pugh in a variety of ways. Her performance reviews went from very good to unsatisfactory, and she ultimately received a letter from CPS stating that her position was no longer available.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff, as well as any reasonable inferences that can be drawn from those facts. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), such that the defendant is given "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47(1957)).

Complaints filed by *pro se* plaintiffs are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, *pro se* "litigants are not exempt from procedural rules," *Jones v. Mem'l Hosp. of South Bend, Inc.,* 301 Fed. Appx. 548, 548 (7th Cir. 2008). And, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 667 (7th Cir. 2007); *United States v. Lockheed-Martin Corp.,* 328 F.3d 374, 376-78 (7th Cir. 2003) (a complaint with 400 paragraphs covering 155 pages followed by ninety-nine attachments, replete with undefined acronyms and mysterious cross-references, was so confused that neither the court nor the adverse parties should be required to "try to fish a gold coin from a bucket of mud").

## III. Analysis

Essentially plaintiff alleges two things. She alleges that the Chicago Public Schools paid her less than the amount allocated for her position under certain grant programs, and she alleges that her supervisors and the Chicago Public Schools retaliated against her when she complained about the payroll issues.

Pugh's complaint says very little about the roll of the Illinois State Board of Education, which she names as a defendant in this case. She seems to assert that the ISBE failed to provide adequate oversight for the grant programs administered by the Chicago Public Schools. For example, she cites at length from a 2001 legislative audit report, which concluded, in part, that the ISBE had insufficient management controls for the funding it allocated to various education-related entities. Pugh attempts to relate that legislative report to her claims as follows:

---

[2] In an effort to avoid unnecessary distraction, the Court will not use "[sic]" to indicate where spelling and grammar mistakes are original to the complaint.

> The Chicago Board of Education, and the Chicago, Teachers Union, was able to
> get away with this scheme , for as long as they had, based on the simple fact, that
> there is no actual accountability, for where the funds, which are given to the
> Board of Education, actually are spent, therefore, making very easy, for the sham
> job, of which was, put over on the plaintiff....[2]

Even assuming, for the sake of argument, that the ISBE failed to appropriately supervise its grants to the Chicago Public Schools, Pugh is not in a position to recover for that. Sometimes state agencies do things that citizens regard as inefficient or even incompetent, but unless those agencies violate a citizen's constitutional or statutory rights, or otherwise deprive the citizen of some entitlement, Courts generally cannot intervene. Because Pugh does not allege that the ISBE violated any legal right or had any duty to her, she cannot recover for its alleged mismanagement. Because Pugh's amended complaint makes no other allegations regarding the ISBE, the Court dismisses the ISBE from this action with prejudice.

The Court next addresses Pugh's claims against the individual defendants Christopher A. Koch and Delorise Cunigan. Pugh alleges that Koch worked for the ISBE, and that he did nothing when she informed him that the Chicago Public Schools misclassified her position and underpaid her. Again, because Pugh's complaint contains no facts from which the Court can infer that Koch violated Pugh's legal rights or had any duty to her, Pugh cannot recover for his alleged inaction. Accordingly, the Court dismisses Koch from this action with prejudice.

As for Pugh's former school special education coordinator, Deloris Cunigan, Pugh alleges that Cunigan discriminated against her on the basis of her age and retaliated against her for complaining about CPS's misclassification of her position. Cunigan cannot be held liable for discriminating against Pugh under the ADEA, because she was not Pugh's employer, as that term is defined by the statute. See *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 n. 2 (7th Cir. 1995) (suggesting that no individual liability exists for a supervisor under the ADEA); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) (same). Pugh's employer was the Chicago Board of Education, and the Court notes that Pugh has sued that entity in a separate action currently pending before Judge Cole. *Pugh v. the Chicago Board of Education,* No. 10-cv-4115. Pugh has also failed to state a claim against Cunigan for the alleged retaliation because she has alleged no facts from which the Court could infer that her complaints about position misclassification constituted some type of protected activity.

For the foregoing reasons, the Court grants Defendants' motions to dismiss.